UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SHEHLA KHAN et al.,

    *Plaintiffs*,

v.

ANTONY J. BLINKEN,

    *Defendant*.

Civil Action No. 23-3474 (TJK)

**MEMORANDUM**

Plaintiffs are Pakistani nationals who allege that their immigrant visa applications have been pending since October 2021, when their I-140 national interest waiver petition was approved. ECF No. 1 ("Pet.") ¶¶ 1, 17. Plaintiff Shehla Khan is a researcher in the field of biotechnology and nanotechnology and the principal applicant seeking an employment-based EB-2 visa; her spouse and child are derivative applicants. *Id.* ¶ 3. Plaintiffs became documentarily qualified in December 2021 but have still not been scheduled for an interview related to the visa process. *Id.* ¶¶ 5–6. Two years later, in November 2023, they sued, alleging that Defendant Antony J. Blinken, in his official capacity as U.S. Secretary of State, has unreasonably delayed resolving their visa applications, and seeking to compel him to complete that processing and issue a final decision. They bring two counts for unreasonable delay, one under the Administrative Procedure Act ("APA") and the other under the Mandamus Act. Defendant moves to dismiss for failure to state a claim on several grounds. For the reasons explained below, the Court will grant the motion and dismiss the case.

"A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a plaintiff's complaint; it does not require a court to 'assess the truth of what is asserted or determine whether a plaintiff has

any evidence to back up what is in the complaint.'" *Herron v. Fannie Mae*, 861 F.3d 160, 173 (D.C. Cir. 2017) (quoting *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002)). "In evaluating a Rule 12(b)(6) motion, the Court must construe the complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.'" *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)). But a court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

The APA authorizes a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). "To state a claim for unreasonable delay, Plaintiffs must first allege that the agency 'failed to take a discrete agency action that it is required to take' . . . and, second, that the delay was unreasonable." *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023) (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004), and *Am. Anti-Vivisection Soc'y v. U.S. Dep't of Agric.*, 946 F.3d 615, 621 (D.C. Cir. 2020)). Plaintiffs also invoke the Court's mandamus jurisdiction. Courts may issue writs of mandamus to "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "[C]onsideration of any mandamus petition starts from the premise that issuance of the writ is an extraordinary remedy, reserved only for the most transparent violations of a clear duty to act." *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (internal quotation marks and citations omitted). The central question, then, is "whether

the agency's delay is so egregious as to warrant mandamus." *Id*. (quoting *Telecomms. Rsch. & Action Ctr. v. FCC* ("*TRAC*"), 750 F.2d 70, 79 (D.C. Cir. 1984)).[1]

The same standard applies to claims of unreasonable delay under the APA and the Mandamus Act. *See Norton*, 542 U.S. at 63–64; *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016). "There is 'no *per se* rule as to how long is too long' to wait for agency action." *In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 419 (D.C. Cir. 2004) (quoting *In re Int'l Chem. Workers Union*, 958 F.2d 1144, 1149 (D.C. Cir. 1992)). Instead, courts rely on the six "*TRAC* factors":

> (1) the time agencies take to make decisions must be governed by a rule of reason;
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (5) the nature and extent of the interests prejudiced by delay; and

---

[1] The Court need not decide whether, under the APA, Plaintiffs have adequately alleged that the agency failed to take a discrete agency action it was required to take, because dismissal would still be appropriate either way. *See, e.g.*, *Pourabdollah v. Blinken*, No. 23-cv-1603, 2024 WL 474523, at *6 & n.5 (D.D.C. Feb 7, 2024) (addressing the unreasonableness of the alleged delay after assuming the existence of a "discrete, required duty"); *see also Da Costa*, 80 F.4th at 340 (considering whether the alleged delay was unreasonable where "USCIS does not contest Plaintiffs' assertions of a nondiscretionary duty on the part of the agency" (citations omitted)). Similarly, under the Mandamus Act, if the requirement that the agency possess a duty to act is jurisdictional, it is statutory, and not constitutional, in nature. *See Rashidian v. Garland*, No. 23-cv-1187 (ACR), 2024 WL 1076810, at *5 n.5 (D.D.C. Mar. 8, 2024). And courts may "address[] the merits where doing so ma[kes] it possible to avoid a doubtful issue of *statutory* jurisdiction." *Chalabi v. Hashemite Kingdom of Jordan*, 543 F.3d 725, 728 (D.C. Cir. 2008) (quoting *Kramer v. Gates*, 481 F.3d 788, 791 (D.C. Cir. 2007)).

>    (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.2d at 80 (cleaned up); *see also Da Costa*, 80 F.4th at 340 ("[T]o guide our unreasonable-delay analysis, we ordinarily look to six non-exclusive *TRAC* factors." (citing *id.*)); *Mukkavilli v. Jaddou*, No. 23-cv-5138, 2024 WL 1231346, at *1 (D.C. Cir. Mar. 22, 2024).

These factors "are not 'ironclad,' but rather are intended to provide 'useful guidance in assessing claims of agency delay.'" *In re Core Commc'ns, Inc.*, 531 F.3d at 855 (quoting *TRAC*, 750 F.2d at 80). "Each case must be analyzed according to its own unique circumstances," as each "will present its own slightly different set of factors to consider." *Air Line Pilots Ass'n, Int'l v. Civ. Aeronautics Bd.*, 750 F.2d 81, 86 (D.C. Cir. 1984). Whether a delay is unreasonable "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003).

In this case, taken together, the *TRAC* factors weigh strongly in Defendant's favor. Thus, even accepting Plaintiffs' allegations as true, they do not state a claim for unreasonable delay under this Circuit's precedents and the case must be dismissed.[2]

---

[2] Plaintiffs argue that dismissal would be "premature" at this stage because unreasonable-delay claims "require fact-based inquiries." ECF No. 8 at 29. But recent D.C. Circuit precedent makes clear that a court may consider the *TRAC* factors at the motion-to-dismiss stage where, as here, the facts alleged do not support a plausible claim of unreasonable delay. *See, e.g.*, *Mukkavilli*, 2024 WL 1231346, at *1–2; *Da Costa*, 80 F.4th at 339–40. And that has been the longtime practice in this District. *See, e.g.*, *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 95 (D.D.C. 2020); *Ghadami v. DHS*, No. 19-cv-397 (ABJ), 2020 WL 1308376, at *8 (D.D.C. Mar. 19, 2020). "In applying these factors, the Court is not determining whether there has been an unreasonable delay; rather, it is determining whether plaintiffs' complaint has alleged facts sufficient to state a plausible claim for unreasonable administrative delay." *Ghadami*, 2020 WL 1308376, at *7 n.6.

The first two *TRAC* factors are typically considered together. *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 317 (D.D.C. 2020). And the first is often considered the "most important." *In re Core Commc'ns, Inc.*, 531 F.3d at 855. The Court must determine "whether the agency's response time complies with an existing specified schedule and whether it is governed by an identifiable rationale." *Ctr. for Sci. in the Pub. Int. v. FDA*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014).

These two factors, taken together, favor Defendant. "There is no congressionally imposed timeline" for the embassy to adjudicate a visa application. *Bagherian*, 442 F. Supp. 3d at 95. "To the contrary, Congress has given the agencies wide discretion in the area of immigration processing." *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153–54 (D.D.C. 2017). Thus, lacking a "set timeline, the Court looks to case law for guidance." *Dastagir v. Blinken*, 557 F. Supp. 3d 160, 165 (D.D.C. July 9, 2021). In *Da Costa*, the D.C. Circuit found a four-and-a-half-year delay not unreasonable. 80 F.4th at 342. For their part, "[d]istrict courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." *Lee v. Blinken*, No. 23-cv-1783 (DLF), 2024 WL 639635, at *5 (D.D.C. Feb. 15, 2024) (quoting *Rahman v. Blinken*, No. 22-cv-2732 (JEB), 2023 WL 196428, at *4 (D.D.C. Jan. 17, 2023)). Indeed, "[c]ourts in this District consistently have held that two or three years does not constitute an unreasonable delay." *Tekle v. Blinken*, No. 21-cv-1655 (APM), 2022 WL 1288437, at *3 (D.D.C. Apr. 29, 2022) (collecting cases).

Plaintiffs sued in November 2023, about two years after they were told they were documentarily qualified. Their wait time now amounts to about two-and-a-half years, because courts "measure the period of delay from the last government action to the issuance of the opinion."

5

*Nusrat v. Blinken*, No. 21-cv-2801 (TJK), 2022 WL 4103860, at *6 n.6 (D.D.C. Sept. 8, 2022).[3] Simply put, that delay does not approach unreasonable under the relevant case law.

Moreover, Defendant asserts that visa interviews are scheduled in the order in which the cases become "documentarily complete," a methodology that courts in this District have consistently found is a "rule of reason," satisfying the first *TRAC* factor. ECF No. 6 at 23; 9 FAM § 504.4-6 ("Upon visa availability, [the National Visa Center] generally schedules appointments in the chronological order of the documentarily complete applicants."); *see also Mottahedan v. Oudkirk*, No. 23-cv-3486 (CKK), 2024 WL 124750, at *4 (Jan. 11, 2024). Plaintiffs do not plausibly allege that Defendant has not followed this rule.[4] And nothing about the length of the delay—considered a "rough yardstick" as to whether an agency is observing its rules—suggests otherwise. *Oudkirk*, 2024 WL 124750, at *4. After all, in *Da Costa*, the D.C. Circuit held that, while "undoubtedly maddening," the four-and-a-half-year delay there was "not sufficient to show that USCIS does not follow a rule of reason in processing" the visa applications at issue.[5] 80 F.4th at 339–40, 342.

---

[3] Plaintiffs argue that they have had to wait much longer than two years because they submitted their I-140 national interest waiver petition back in October 2020. *See* ECF No. 8 at 12. But "[c]ourts in this District routinely analyze delay claims based on the date of placement in administrative processing, not the date that plaintiffs filed their application." *Sharifymoghaddam v. Blinken*, No. 23-cv-1472 (RCL), 2024 WL 939991, at *5 & n.4 (D.D.C. Mar. 5, 2024) (declining to measure delay from the date that plaintiffs submitted their initial I-140 petition).

[4] Plaintiffs cite two declarations—submitted by Defendant in *other* cases—that were executed by the State Department official who leads the office with responsibility for screening visa applicants for security-related grounds of visa ineligibility. *See* ECF No. 8-2. The declarations describe the process that follows when a consular officer requests a Security Advisory Opinion (SAO) about a visa applicant's eligibility. As Plaintiffs point out, because of its complexity, that process does not operate on a "first-in-first-out" basis. *Id.* at 7. But Plaintiffs do not plausibly allege that process has anything to do with the delay in this case. Indeed, it appears that a request for an SAO only happens after the officer has *refused an application* on security-related grounds, and nothing in the record suggests that has happened here. *Id.* at 5.

[5] Plaintiffs point out that Congress has expressed its sense that "the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of

In addition, the context of an agency action and the resources it can bring to bear are important elements of reasonableness. *See Da Costa*, 80 F.4th at 342 ("When an agency faces a shortage of resources to resolve a backlog, we consider those resource limitations and the labor needed to resolve them in assessing agency delay." (citing *Mashpee*, 336 F.3d at 1100, 1102)). In 2020, about six months before Plaintiffs submitted their I-140 national interest waiver petition, U.S. consulates and embassies around the world closed because of the COVID-19 pandemic. Thus, Defendant represents that the delay here is in part a function of Defendant's decision to reduce consular processing to protect the health of consular officers and the public. ECF No. 6 at 23–24. These circumstances further underscore why the first and second factors, taken together, weigh in Defendant's favor. *See Da Costa*, 80 F.4th at 342 (citing COVID-19 pandemic as consideration in assessing first *TRAC* factor).

The fourth *TRAC* factor considers the effect of expedition on an agency's competing priorities. *TRAC*, 750 F.2d at 80. This factor often favors the agency and "carries the greatest weight in many cases." *Milligan*, 502 F. Supp. 3d at 319. In fact, so substantial is its weight that "[t]his Circuit has refused to grant relief" based on the fourth factor "even [when] all the other factors considered in *TRAC* favored it." *Id.* (cleaned up). That is so because courts "are generally hesitant to direct agencies which tasks to prioritize, particularly if such intervention would move the petitioner to 'the head of the queue' and 'simply move[] all others back one space.'" *Lee*, 2024 WL 639635, at *6 (quoting *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 75–76 (D.C. Cir. 1991)). In other

---

the application." 8 U.S.C. § 1571(b). But "a sense of Congress resolution is not law." *Emergency Coal. to Def. Educ. Travel v. Dep't of Treasury*, 545 F.3d 4, 14 n.6 (D.C. Cir. 2008). At most, Congress's "aspirational statement" only slightly tilts the second *TRAC* factor in Plaintiffs' favor. *Da Costa,* 80 F.4th at 344 ("This factor somewhat favors Plaintiffs, as they have waited longer than 180 days."). It does no more than that because the "delay has not reached the level of disproportionality [courts] have previously held sufficient to grant relief." *Id.*

words, granting expedited agency action is inappropriate when that relief "would necessarily come 'at the expense of other similarly situated applicants'" with "'no net gain'" in adjudications achieved. *Da Costa*, 80 F.4th at 343–44 (quoting *Burwell*, 812 F.3d at 192, and *In re Barr Lab'ys, Inc.*, 930 F.2d at 75).

In this case, Plaintiffs "ask[] for just that." *Dastagir*, 557 F. Supp. 3d at 167. They seek to compel Defendant to decide the visa application at issue in 21 days. Pet. at 22. But because consular "processing capacity is presently a zero-sum game," *Murway v. Blinken*, No. 21-cv-1618 (RJL), 2022 WL 493082, at *4 (D.D.C. Feb. 16, 2022) (cleaned up), their requested relief would amount to a "judicial reordering[] of agency priorities," *Rahman*, 2023 WL 196428, at *4. In other words, Plaintiffs seek to cut to the front of the line. *Cf. Dastagir*, 557 F. Supp. 3d at 169 ("Dastagir offers no basis for judicial line-cutting those also waiting their turn."). Ordering Defendant to immediately schedule visa interviews for Plaintiffs and adjudicate their visas is "the very type of agency action . . . that if compelled would presumably delay other adjudications." *Xiaobing Liu v. Blinken*, 544 F. Supp. 3d 1, 13 (D.D.C. 2021) (citing *Skalka*, 246 F. Supp. 3d at 154). And even though "the effect of an individual case would be minimal, an accumulation of such individual cases being pushed by judicial fiat to the front of the line would erode the ability of agencies to determine their priorities." *Tate v. Pompeo*, 513 F. Supp. 3d 132, 150 (D.D.C. 2021). Thus, the fourth *TRAC* factor weighs strongly in favor of Defendant.

Factors three and five involve "the interests prejudiced by delay," including possible effects on "human health and welfare." *TRAC*, 750 F.2d at 80; *see also Didban v. Pompeo*, 435 F. Supp. 3d 168, 177 (D.D.C. 2020) (considering the third and fifth factors in tandem). Khan is a researcher in the field of biotechnology and nanotechnology focused on medicinal plants and extraction of natural bioactive compounds, which has "implications on public health particularly regarding

8

novel drug discovery." Pet. ¶ 17. And the rest of the family "cannot plan for the minor children's education or put roots down by purchasing a home." ECF No. 8 at 14. These circumstances are truly unfortunate. But "[w]hile the Court does not doubt that [Plaintiffs] ha[ve] an interest in prompt adjudication, so too do many others facing similar circumstances." *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 53 (D.D.C. 2021). And to the extent these *TRAC* factors weigh in Plaintiffs' favor, it is clear "[t]hey do not 'overcome the other factors that weigh strongly in the Government's favor.'" *Dastagir*, 557 F. Supp. 3d at 168 (citation omitted).

The sixth *TRAC* factor, which provides that "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed,'" *TRAC*, 750 F.2d at 80, is neutral. Although Plaintiffs allege an unreasonable delay and decry their lack of information about the reasons for that delay, they cite no specific evidence of bad faith or impropriety. *See generally* Pet. Nor does the length of the delay itself suggest bad faith.[6]

\* \* \*

In summary, after weighing the *TRAC* factors, the Court has little difficulty concluding that Plaintiffs' Petition does not state a claim that the adjudication of their visa application has been unreasonably delayed. In fact—unfortunately—their wait time "pales in comparison to the longer delays other applicants have unsuccessfully challenged in this district." *Mohammad v. Blinken*, 548 F. Supp. 3d 159, 169 (D.D.C. 2021). In the end, delays "stemming from resource-allocation

---

[6] Plaintiffs also move to compel Defendant to produce a certified list of the administrative record under Local Civil Rule 7(n), which provides that "the agency must file a certified list of the contents of the administrative record with the Court within 30 days following service of the answer to the complaint or simultaneously with the filing of a dispositive motion." ECF No. 7 at 1–2. But the Court will "[f]ollow[] the general practice in this Court" and deny that motion because "'the administrative record is not necessary for [the Court's] decision.'" *Arab v. Blinken*, 600 F. Supp. 3d 59, 65 n.2 (D.D.C. 2022) (quoting *Connecticut v. U.S. Dep't of Interior*, 344 F. Supp. 3d 279, 294 (D.D.C. 2018)).

decisions simply do not lend themselves to judicial reordering of agency priorities." *Milligan*, 502 F. Supp. 3d at 319 (cleaned up).  And they offer no reason for the Court to bump them to the front of the line.  For all these reasons, the Court will grant Defendant's motion and dismiss the case.  A separate order will issue.

/s/ Timothy J. Kelly<br>
TIMOTHY J. KELLY<br>
United States District Judge

Date: June 7, 2024